UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILFORD A. TOYE, JR.,

                Plaintiff,

  -v-                                             1:13-CV-414

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                   OF COUNSEL:

WILFORD A. TOYE, JR.
Plaintiff, Pro Se
P.O. Box 30142
Staten Island, NY 10303

HON. ERIC T. SCHNEIDERMAN             JEB HARBEN, ESQ.
Attorney General of the State of New York   Ass't Attorney General
Attorney for Defendant
120 Broadway
New York, NY 10271

HON. ERIC T. SCHNEIDERMAN             KELLY L. MUNKWITZ, ESQ.
Attorney General of the State of New York   Ass't Attorney General
Attorney for Defendant
The Capitol
Albany, NY 12224


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Wilford A. Toye, Jr. ("Toye" or "plaintiff"), proceeding pro se, brings this action against defendant New York State Department of Corrections and Community Supervision[1] ("DOCCS" or "defendant") alleging retaliation based on his race, color, and age in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA").

On May 30, 2013, defendant filed a motion to dismiss the Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Rule ___") 12(b)(6). Plaintiff opposed. The motion was taken on its submissions without oral argument.

## II. FACTUAL BACKGROUND

The following factual allegations, drawn from the Amended Complaint and plaintiff's opposition papers,[2] are assumed true for purposes of this motion.

Toye has been employed by DOCCS for about fifteen years. Until its closure in December 2011, plaintiff worked at the Arthur Kill Correctional Facility in Staten Island, New York. Thereafter, plaintiff was assigned to work as a Corrections Officer ("CO") at the Ulster Correctional Facility ("Ulster") in Napanoch, New York. However, he did not begin working at

---

[1] Plaintiff initially filed this action in the Eastern District of New York, naming Ulster Correctional Facility as the defendant. Pursuant to a January 10, 2013, text order entered by Magistrate Judge Lois Bloom, plaintiff's complaint was amended to name DOCCS as the correct defendant in the action. ECF No. 10. On April 16, 2013, the parties stipulated to transfer this action to the Northern District of New York and an order to that effect was entered the same day. ECF No. 20.

[2] Where a pro se plaintiff is faced with a motion to dismiss, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint. Donhauser v. Goord, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers), vacated in part on other grounds 314 F. Supp. 2d 160 (N.D.N.Y. 2004).

Ulster until February 2012 because of "an injury and the death of [his] mother[.]" Plaintiff identifies himself as "Black." Pl.'s Mem. Opp'n 20.

On May 11, 2012, at approximately 3:00 p.m., Toye was working on the D-1 housing unit when he received a phone call from fellow CO Javier Cortes ("Cortes") about the daily security assignments. Id. 2. During this phone call, Cortes referred to plaintiff as "bub." Id. Plaintiff immediately informed Cortes that his "name is Officer Toye[,] not bub," and Cortes hung up the phone. Id. When Cortes called back a few minutes later, plaintiff told him that "you need to call your own kind that word," and Cortes hung up the phone again. Id.

Approximately thirty minutes after these two phone calls, another officer relieved Toye from his post on the D-1 housing unit. During this break, plaintiff left the building to retrieve his lunch pail from his car. When he re-entered the building's lobby, Cortes was nearby and began calling him "bub and various other words." Id. Plaintiff then walked to the arsenal, picked up his equipment, and headed back to work.

At approximately 10:50 p.m. that evening, Toye returned to the arsenal to drop off his equipment and end his shift. Cortes was nearby[3] and asked plaintiff, "bub where's your ID[?]" Pl.'s Mem. Opp'n 2. Plaintiff showed Cortes his identification, and then went to the lobby desk to submit a "bid slip" for an upcoming "patrol" assignment. While plaintiff was submitting this bid slip, Cortes came over to him and yelled "what's up bub" and repeatedly called him "bubba." Id. 1, 2. Twenty-five other officers, including the chart sergeant and lieutenant, overheard these statements and were all "laughing with" Cortes at this time. Id.

---

[3] Plaintiff's own opposition papers present conflicting accounts of this encounter with Cortes. Compare Pl.'s Mem. Opp'n 1 (plaintiff's "response to motion to dismiss" addressed to the court), with Pl.'s Mem. Opp'n 2 (undated letter from Toye to his supervisor).

- 3 -

After submitting his bid slip, Toye walked away from Cortes and went into the line-up room. Cortes followed him and "bumped [him] with his stomach" in a manner that plaintiff understood to mean that Cortes was "trying to get me to fight him." Id. 1. Plaintiff informed Cortes that "bub means nigger" where he is from.[4] Id. 2. Cortes replied that he was responsible for starting the cultural diversity program at Ulster, and referred to plaintiff as "bub" several more times. Id. Plaintiff and Cortes began arguing, but the other officers eventually pulled Cortes away and everyone left the area. Id. 1. While the exact timing is unclear, plaintiff submitted a written report of this incident to his supervisor, Deputy Security Superintendent ("DSS") Morton. Pl.'s Mem. Opp'n 2. Plaintiff also verbally reported the incident to DSS Morton, who laughed it off and told him that "[i]t means nothing." Id. 1. At some point over the next few days, Cortes also filed a written report with DSS Morton. This report accused plaintiff of lifting his coat to show his weapon in a menacing gesture in response to Cortes' statements of "bub" or "bubba." Id. 23, 26.

On May 15, 2012, Toye was awarded the "patrol" assignment. Id. 4. About twenty officers "seem[ed] upset" that plaintiff had won this job bid. Id. 3. On May 17, 2012, an unnamed union steward approached plaintiff and instructed him to write a memo to DSS Morton indicating that he was "willing to keep the incident [with Cortes] within facility level [ ] with the agreement there will be no retaliation from officers [and] supervisors." Id. 6. Plaintiff wrote this memo. Pl.'s Mem. Opp'n 6.

---

[4] Plaintiff has attached a printed copy of the Urban Dictionary entry for "bubba," which proffers an extremely provocative definition of the term. Pl.'s Mem. Opp'n 12. Urban Dictionary is a web site that allows users to submit and publish their own definitions of various words. It exercises very limited editorial oversight of these various definitions. Webster's Dictionary defines "bub" as slang for "brother," "boy," or "buddy," defines "bubba" as "brother" or "close friend," and notes that bubba is "sometimes used as a familiar term of address." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 189 (4th ed. 2008).

- 4 -

On May 18, 2012, Toye and his union representative were called to a meeting with DSS Morton to discuss the encounter between plaintiff and Cortes on May 11, 2012. At this meeting, plaintiff claimed that Cortes' report was a lie and that he had never shown his weapon in a menacing gesture. Based on these conflicting allegations, DSS Morton informed plaintiff that he was prohibited from carrying a firearm until further notice, and that he would not be allowed to work any job assignment that required possession of a weapon until the incident was investigated. Id. Cortes' firearms privileges were also suspended pending this investigation. Id. 21. Because the "patrol" assignment that he had recently won required possession of a weapon, plaintiff was unable to work this new assignment until the investigation was completed.

Toye filed a charge with the New York State Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC") in June 2012. On July 13, 2012, the EEOC issued a "Dismissal and Notice of Rights." On September 6, 2012, plaintiff commenced this action.

### III. DISCUSSION

#### A. Motion to Dismiss—Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief" (FED. R. CIV. P. 8(A)(2)), more than mere conclusions are required. Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Dismissal is appropriate only where plaintiff has failed to provide some basis for

the allegations that support the elements of his claims.  See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

When considering a motion to dismiss, the complaint is to be construed liberally, all factual allegations are deemed to be true, and all reasonable inferences must be drawn in the plaintiff's favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). These basic pleading requirements apply to pro se plaintiffs as well as plaintiffs represented by counsel, but "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)) (internal quotation marks omitted).

However, "all normal rules of pleading are not absolutely suspended" when a plaintiff is proceeding pro se.  Jackson v. Onondaga County, 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) (McAvoy, S.J.) (internal quotation marks and footnote omitted).  Even a pro se plaintiff must plead sufficient factual allegations suggesting an entitlement to relief.  Simply put, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (citations omitted).

### B. Age Discrimination in Employment Act

Toye's Amended Complaint indicates that he was more than forty years old at the time of the alleged discriminatory events, but does not contain a check mark in the box[5] to

---

[5] Plaintiff's Amended Complaint is a completed version of a form document provided to pro se litigants by the Eastern District of New York.  ECF No. 9.  This document guides a party seeking to file a civil rights action under Title VII, the ADEA, or the ADA to place a check mark next to the appropriate statute, fill in some personal information, check a series of boxes to identify the alleged discriminatory conduct, and write a brief description of the facts of the case.  A blank copy of this form complaint, along with instructions for its completion, can be found on the Eastern District of New York's web site at:  http://goo.gl/gHPUv9.

indicate that "age" was a basis for the events in issue. Plaintiff's various factual allegations, contained in both his Amended Complaint and opposition papers, do not support a claim under this federal statute.

At this early stage of the litigation, a plaintiff is not required to specifically state in his pleadings that age was the "but for" cause of the alleged adverse employment action. See Roginsky v. County of Suffolk, 729 F. Supp. 2d 561, 568 (E.D.N.Y. 2010). However, a complaint must still contain sufficient facts to plausibly conclude that "but for" his age, the adverse action would not have occurred. Id.

Even measured against this permissive standard, Toye's Amended Complaint is insufficient. He does not allege that any of the actions taken by Cortes or DSS Morton were motivated by, or even related to, his age. Beyond filling out his birth year and current age in the form complaint, plaintiff does not make a single factual allegation that is related to his age in any way. Accordingly, plaintiff has failed to state a claim under the ADEA.

### C. **Americans with Disabilities Act**

Toye's Amended Complaint also indicates that his retaliation claim is brought pursuant to the ADA. However, plaintiff does not allege that he suffers from, or was regarded as suffering from, a disability under the ADA.

A plaintiff alleging a violation of the ADA must plead, inter alia, that he was disabled within the meaning of the statute and that he suffered an adverse employment action as a result of his disability. See Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001).

Toye's Amended Complaint and opposition papers do not allege that he was disabled, that he was regarded as being disabled, or that the actions of any party were taken as a result of his disability. Beyond placing a check mark next to the ADA on the form complaint,

plaintiff does not make a single factual allegation related to a disability. Accordingly, plaintiff has failed to state a claim under the ADA.

### D. Retaliation

Construing Toye's various allegations liberally and drawing all reasonable inferences in his favor, he seeks to allege that DSS Morton suspended his firearms privileges as retaliation for filing a written complaint about Cortes' verbal harassment.

Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any . . . employee [ ] . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). A Title VII retaliation claim requires a plaintiff to plead facts tending to show that: (1) he participated in a protected activity known to the defendant; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007) (per curiam) (citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)). "Protected activity" includes both the filing of formal discrimination charges as well as informal protests, such as making a complaint to management. Pellegrini v. Sovereign Hotels, Inc., 740 F. Supp. 2d 344, 354 (N.D.N.Y. 2010) (Sharpe, C.J.) (citing Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)).

Toye's allegation that he filed a written complaint with DSS Morton about Cortes' verbal harassment sufficiently constitutes protected activity for purposes of Title VII's anti-retaliation provision. See id. Similarly, plaintiff's allegation that he spoke to DSS Morton, who laughed off his complaints about Cortes, is sufficient to impute knowledge of plaintiff's protected activity to defendant. See id. However, DSS Morton's decision to suspend

plaintiff's firearms privileges, without more, is not a sufficiently "adverse employment action" for purposes of the statute.

In the context of a Title VII retaliation claim, an adverse employment action is one that is "materially adverse to a reasonable employee or job applicant." Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). Actions are "materially adverse" if they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id.

However, a materially adverse change in an employee's working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Moccio v. Cornell Univ., 889 F. Supp. 2d 539, 585 (S.D.N.Y. 2012) (quoting Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012)), aff'd, 526 Fed. Appx. 124 (2d Cir. 2013) (summary order). Examples of actions that are "sufficiently disadvantageous" so as to be considered materially adverse "include a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (citation and internal quotation marks omitted).

Here, DSS Morton's suspension of Toye's firearms privileges pending an investigation prevented him from working the "patrol" assignment that he had recently won. While plaintiff clearly feels that this is a desirable assignment and that he is entitled to it, he does not provide a single factual allegation to even suggest that his inability to work this "patrol" assignment is anything more than a mere inconvenience or a short-term alteration of his job responsibilities at Ulster. Plaintiff has been assigned other duties in his short time as a CO at

Ulster, such as his posting to the D-1 housing unit on the day that he encountered Cortes. The mere short-term suspension of plaintiff's firearms privileges, without additional factual allegations to suggest some way in which his material responsibilities in his capacity as a CO at Ulster were diminished, is not a sufficiently disadvantageous action for the purposes of Title VII. See id.

Even assuming arguendo that his inability to work the "patrol" assignment constituted an adverse employment action, Toye does not identify a sufficient causal connection between his complaint about Cortes' verbal harassment and DSS Morton's decision to suspend his firearms privileges. While plaintiff has obviously concluded that he is the victim of retaliation, he has failed to provide the requisite factual allegations in support of this belief. "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." Robles v. Cox & Co., Inc., 841 F. Supp. 2d 615, 628 (E.D.N.Y. 2012) (quoting Gordon v. N.Y.C. Bd. of Educ., 232 F.3d 111, 117 (2d Cir. 2000)). While a plaintiff may establish a Title VII retaliation claim even where the retaliatory motive is not the sole cause of the adverse employment action, it must be "at least a 'substantial' or 'motivating' factor" behind the adverse action. Raniola v. Bratton, 243 F.3d 610, 625 (2d Cir. 2001) (citation omitted).

DSS Morton received complaints from both Toye and Cortes as a result of the May 11, 2012, encounter between the two men. Faced with conflicting accounts of the events of that evening, DSS Morton issued identical orders that resulted in a suspension of the firearms

privileges of both parties until an internal investigation could be completed.  Pl.'s Mem. Opp'n 21-24.  Plaintiff alleges that Cortes lied on this report and suggests that an unnamed union representative told him that DSS Morton wanted to keep the written complaint against Cortes "within facility level."  However, plaintiff admits that the only adverse action taken by DSS Morton was to suspend the firearms privileges of both men and that this action was taken based on Cortes' report and fears that plaintiff wanted to harm himself.  ECF No. 9, 5.  Outside of this single act, plaintiff does not attempt to identify any other adverse actions taken against him by defendant.  Perhaps plaintiff could plead additional factual allegations tending to show that he was subjected to some form of discriminatory, disparate, or otherwise retaliatory treatment subsequent to his written complaint against Cortes, but his Amended Complaint and opposition papers fail to do so.  Accordingly, plaintiff has failed to state a claim for retaliation.

### E.  Hostile Work Environment

Toye's Amended Complaint and opposition papers arguably contain a series of allegations relating to a hostile work environment.  Specifically, plaintiff alleges that Cortes called him "bub" or "bubba" several times over the course of the day on May 11, 2012.

Title VII guarantees an employee's right to work in a discrimination-free environment, but it does not impose a general civility code on the American workplace.  Hicks, 593 F.3d at 165 (quoting White, 548 U.S. at 68).  A hostile work environment claim requires a plaintiff to plead facts tending to show that the alleged conduct:  "(1) 'is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [race].'"  Patane,

508 F.3d at 113 (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)); see also Gregory, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy this third element).

In cases where the employer is a defendant, there must also be a sufficient basis for imputing the allegedly discriminatory conduct to that entity. Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001) (citing Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997)). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)) "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Id. (citations omitted).

Toye alleges that Cortes referred to him as "bub" or "bubba" several times throughout the course of the day on May 11, 2012. Indeed, plaintiff's written complaint to DSS Morton confirms that Cortes' repeated use of "bub" or "bubba" is the only allegedly racial comment, slur, or joke that plaintiff felt was offensive. Pl.'s Mem. Opp'n 2. But plaintiff's subjective feeling that "bub" or "bubba" are racially offensive terms, standing alone, is not actionable. See Harris, 510 U.S. at 21 (the "mere utterance of an . . . epithet which engenders offensive feelings in an employee" does not implicate Title VII).

Even assuming arguendo that "bub" or "bubba" implicates Title VII's protections, Toye's allegations are limited to the actions of a single officer on a single day. Neither plaintiff's Amended Complaint nor his opposition papers contain a single factual allegation about "bub" or "bubba" being used by any other officer or on any other day than May 11, 2012. This is confirmed in plaintiff's Amended Complaint, which indicates that defendant is "not still committing these acts against me." ECF No. 9, 3 (emphasis in original); see also

Snell v. Suffolk County, 782 F.2d 1094, 1103 (2d Cir. 1986) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity."). Accordingly, plaintiff has failed to state a hostile work environment claim under Title VII.

## IV. CONCLUSION

Toye's Amended Complaint and opposition papers reveal that on a single day in May 2012, he encountered a fellow employee who treated him in a way that he felt was disrespectful. This same employee felt that plaintiff had acted inappropriately during the encounter. Both plaintiff and the employee filed written reports with their supervisor. Faced with conflicting accounts of the same events, the supervisor suspended the firearms privileges of both employees pending an investigation. None of the various iterations of plaintiff's story, told through his Amended Complaint and opposition papers, contain sufficient factual allegations to state plausible claims under Title VII, the ADA, or the ADEA.

Therefore, it is

ORDERED that

1. Defendant's motion to dismiss the Amended Complaint is GRANTED;

2. Plaintiff's Amended Complaint is DISMISSED; and

3. The Clerk is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

United States District Judge

Dated: December 13, 2013.
   Utica, New York.